UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

F-M Mortgage Corporation,

Civ. No. 08-3399 (PAM/AJB)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

American Bank of St. Paul, Centennial
Mortgage and Funding, Inc., Chase
Manhattan Mortgage Corp., and
Chase Home Finance, LLC,

Defendants.

---

The matter before this Court is Defendants American Bank of St. Paul's and Chase Home Finance's Motions for Summary Judgment. Defendant Centennial Mortgage and Funding, Inc. ("Centennial") has failed to appear in the case. As against American Bank of St. Paul ("American Bank"), Plaintiff F-M Mortgage Corporation alleged conversion and sought an express/constructive trust and an accounting. American Bank asks the Court to grant judgment on all counts against it. As against Chase Home Finance ("Chase"), Plaintiff alleged conversion, unjust enrichment, and breach of contract and asks for an express/constructive trust, a declaratory judgment, and an accounting. Chase moves for summary judgment on each claim filed against it. Chase also moves for affirmative summary judgment on its Counterclaims for conversion, unjust enrichment, tortious interference and its request for a declaratory judgment. For the following reasons, the Court grants summary judgment for American Bank and Chase, and grants partial summary judgment on Chase's Counterclaims.

**BACKGROUND**

Plaintiff and Centennial contracted to originate and sell loans on the secondary market. Plaintiff worked with clients to originate the loans, then Centennial sold the loans on the secondary market.

Centennial had several banking relationships to facilitate its business. Pertinent to this case, Centennial had both a Demand Depository Account ("DDA") and a line of credit with American Bank. In a typical transaction, Centennial sent mortgage packages to American Bank. American Bank then extended credit for the purchase of the loan and transferred the money to Centennial's DDA acount. At Centennial's request, American Bank would then wire money from the DDA account to the institution originating the loan. Centennial would then sell the loan on the secondary market, where it would be purchased by investors such as Chase. Investors were instructed to wire the purchase money to Centennial's DDA account at American Bank. When Centennial confirmed that a specific wire transfer was payment on a loan made by American Bank, American Bank would then take money out of the DDA account to cover the credit that had been extended.

Unbeknownst to it business partners, Centennial was running a check-kiting scheme. American Bank was notified on March 20, 2008, that approximately $6 million in deposits recently made by Centennial would be voided by another banking institution. Because of outgoing checks written by Centennial, this left the DDA account negative by approximately $3 million dollars. American Bank determined that Centennial was in default of the conditions of its loan and began to exercise its right to setoff. Under that right to setoff,

American Bank took possession of any funds deposited into Centennial's DDA account after March 21, 2008. As of today, American Bank claims to have suffered approximately $8 million in losses as a result of Centennial's actions.

At issue in this case are two specific wire transfers relating to loans originated and funded by Plaintiff. With both loans, Plaintiff forwarded the mortgage package to Centennial—including a promissory note assigned to Centennial. Plaintiff believed that once Centennial approved the mortgage package, and before selling the loans on the secondary market, Centennial would pay Plaintiff. But instead of getting a loan advance from American Bank, Centennial sold the promissory notes directly to Chase. Chase then transferred the money to Centennial's DDA account at American Bank.

The first of the wire transfers at issue was in the amount of $140,198.28 ("the Cupido Loan") and was wired by Chase to Centennial's DDA account on March 14, 2008. Although the note was sold to Chase the documentation on the Cupido Loan was incomplete, lacking a Truth in Lending credit disclosure signature, mortgage riders, a mortgage deed, and information on the title commitment. Centennial was still trying to obtain the documentation from Plaintiff at the time the Cupido loan was sold. American Bank represents that the $149,198,28 was depleted when Centennial over-withdrew its DDA account on March 20-21.

The second wire was in the amount of $45,916.01 ("the Campbell Loan") and was wired by Chase to Centennial's DDA account at American Bank on March 25, 2008. According to Plaintiff, Chase was instructed to wire the purchase money to Fidelity Bank and not American Bank. But Chase sent the money to American Bank, who seized the money

under its right to setoff.

As a result of the above transactions, Plaintiff was never paid for the two promissory notes it assigned to Centennial and which were subsequently sold to Chase. Believing it was still the proper owner of the promissory notes, Plaintiff registered as owner of both the Cupido and Campbell loans. In addition, Plaintiff contacted the mortgagees and instructed them that all loan payments were to be made to Plaintiff.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 747.

**A.    Conversion**

Under Minnesota state law, conversion is defined as "an act of willful interference with [the personal property of another], done, without lawful justification, by which any person entitled thereto is deprived of use and possession," and "the exercise of dominion and control over goods inconsistent with, and in repudiation of, the owner's rights in those goods." Christensen v. Milbank Ins. Co., 658 N.W.2d 580, 585 (Minn. 2003) (citations omitted).

1. <u>Plaintiff's Claim Against American Bank</u>

With regard to the Cupido loan, the facts undisputably show that American Bank did not exercise dominion and control over the funds. The Cupido loan money was wired by Chase to the DDA account at American Bank on March 14, 2008. As a result, that money disappeared when the DDA account defaulted on March 21, 2008. Because American Bank never excised dominion and control over the Cupido loan funds, American Bank cannot as matter of law be found to have converted the funds.

As to the Campbell Loan, it is undisputed that American Bank did exercise dominion and control over the money. But American Bank claims that their right to setoff provides a a lawful justification for taking the funds. American Bank's right to setoff is established in two different documents. First, the 1998 Business Account Agreement states that the Bank "may pay any due and payable debt you owe us from money in this account." (Whitcomb Aff., Ex. A).

Second, on March 15, 2007, American Bank and Centennial executed a Loan and Security Agreement. In exchange for the credit line, Centennial promised that if default occurred, American Bank "shall have the right at any time to withdraw money from the Debtor's account maintained with the Lender to make regular payments on behalf of Debtor . . . or to satisfy the note in whole." (Whitcomb Aff., Ex. B). As of March 20, 2008, Centennial was in default under the Loan Agreement of 2007, giving American Bank a legal right to seize and control any funds deposited in the DDA account.

Minnesota recognizes an equitable exception to the right to setoff and Plaintiff argues

that under the equitable exception rule, American Bank had "no right of setoff as to funds in which a third party has an interest, despite the fact that it has no notice of that interest." (Response Br. at 16-17). The equitable exception rule has, however, been limited to cases involving agents or trustees, Berg v. Union State Bank, 229 N.W. 102, 103 (Minn. 1930), and the facts of clearly show that Centennial was not a trustee or an agent.

The undisputed facts show that American Bank did not exercise control and dominion of the Cupido loan funds. Furthermore, once Centennial defaulted, American Bank was entitled to seize the funds under its right of setoff. As such, Plaintiff is unable as a matter of law to succeed on a conversion claim against American Bank.

2. Plaintiff's Claim Against Chase

Chase argues that it is entitled to summary judgment on Plaintiff's conversion claim because Plaintiff has no rights or interest in the loans that are the subject of this lawsuit. Plaintiff undisputedly executed an assignment of the each of the notes to Centennial in the form of an allonges. The allonges described the assignments as being "without recourse." (Bird Aff., Ex. C, Ex. E). Under Minnesota law, "a transfer of the debt carries the mortgage with it." Jackson v. Mortgage Elec. Registration Sys., Inc., 770 N.W.2d 487, 490 (Minn. 2009). Therefore, if Plaintiff assigned the notes to Centennial, the mortgage deeds which act as security for the notes were effectively assigned as well.

Plaintiff argues that the assignment to Centennial was not valid. Under Minnesota law, no specific words are required for an assignment to be effective. Guaranty State Bank of St. Paul v. Lindquist, 304 N.W.2d 278, 280-81 (Minn. 1980). In order for an assignment

6

to be valid "an intent to transfer must be manifested and the assignor must not retain any control over the [mortgage] or any power of revocation." Id. (citations omitted). Plaintiff executed an assignment of the Cupido and Campbell notes and sent the assigned notes to Centennial. The assignments were made "without recourse" and the contract between the parties provided Plaintiff with no way to revoke.

According to Plaintiff's contract with Centennial, payment would be made "following receipt and review of closing documents." (Cummings Aff., Ex. A at 1.) But a failure to produce final documentation does not invalidate the assignment, but rather only gives Centennial the option to require Plaintiff to "repurchase" the loans. (Id.) The contract therefore assumes that Centennial may own and purchase the loans before full documentation was produced. In addition, nothing in the contract precluded Centennial from selling the loans prior to payment.

Plaintiff effectively assigned the Cupido and Campbell notes to Centennial. Plaintiff executed assignments that indicated an intent to transfer. Plaintiff's assignments were "without recourse," and nothing in the contract provided Plaintiff with a right to revoke. Finally, Centennial gave consideration for the assignments in the form of a promised payment. Brooksbank v. Anderson, 586 N.W.2d 789, 794 (Minn. App. 1998) (explaining that consideration exists whenever "something of value [is] given in return for performance or promise of performance.") (citations omitted). Centennial's failure to provide payment, although likely a breach of contract, does not invalidate the assignments.

Plaintiff also argues that Chase does not have a valid interest in the Campbell loan

because Chase had been instructed to wire the money to Fidelity Bank and instead wired payment to American Bank. Plaintiff has given no reason why it is in a position to assert this objection as it was not a party to the contract between Centennial and Chase.

Plaintiff executed a valid assignment of the promissory notes at issue here. In doing so, Plaintiff gave up its rights and interests in the mortgages. Because the undisputed facts show that Plaintiff does not have a valid interest in the Cupido or Campbell loan, Plaintiff cannot as a matter of law succeed on its conversion claim.

### 3. Chase's Claim Against Plaintiff

Chase argues that Plaintiff's actions give rise to a conversion claim. Chase obtained valid assignments of both the Cupido and Campbell loans. As such, Chase was "entitled" to the "use and possession" of the Cupido and Campbell loans. Christensen, 658 N.W.2d at 585. It is undisputed that Plaintiff has registered as the owner of the loans on the MERS system and directed the mortgagees to make the mortgage payments to Plaintiff and not to Chase. Plaintiff therefore willfully interfered with Chase's property, exercising "dominion and control over goods inconsistent with, and in repudiation, of, the owner's rights in those goods." Id. Therefore, the undisputed facts show that Plaintiff's actions constitute conversion and Chase is entitled to summary judgment on its conversion counterclaim.

## B. Unjust Enrichment

Chase moves for summary judgment on Plaintiff's unjust enrichment claim asserted against it, and on its unjust enrichment claim asserted against Plaintiff. A claim for unjust enrichment exists when a party knowingly received something of value to which it was not

8

entitled and that the circumstances are such that it would be unjust to retain the benefit. ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W.2d 302, 306 (Minn. 1996). "[U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully." First Nat'l Bank of St. Paul v. Ramier, 311 N.W.2d 502, 504 (Minn. 1981). Unjust enrichment may be founded on failure of consideration, fraud, or mistake, or "situations where it would be morally wrong for one party to enrich himself at the expense of another." Holman v. CPT Corp., 457 N.W.2d 740, 745 (Minn. Ct. App.1990).

Neither party has alleged facts that establish unjust enrichment. Chase purchased the notes from Centennial pursuant to the contract between those two parties. Chase's actions are not illegal, unlawful, or immoral. As such, summary judgment as to Plaintiff's unjust enrichment claim against Chase is appropriate.

Summary judgment is denied on Chase's unjust enrichment claim against Plaintiff. Chase argues that "Plaintiff knowingly and unlawfully deprived Chase of . . . benefits, in an effort to avoid business losses for which Chase is in no way responsible." (Chase Br. at 17). The facts suggest that Plaintiff was asserting what it believed was a legal right to the benefits of the loan payments. Therefore, Chase has failed to provide undisputed facts supporting its claim.

**C.    Breach of Contract**

Plaintiff acknowledges that its breach of contract claim against Chase should be

9

dismissed because no contract existed between Plaintiff and Chase.

### D. Remainder of Plaintiff's Claims

Chase and American Bank seek summary judgment on the remainder of Plaintiff's claims: for declaratory judgment, constructive/express trust, and an accounting. Having concluded that American Bank is legally entitled to funds seized under its right to setoff and that Chase is legally entitled to the promissory notes its purchased from Centennial, summary judgment as to the remainder of the claims is granted.

### E. Chase's Tortious Interference Counterclaim

Chase seeks affirmative summary judgment on it counterclaim of tortious interference. In order to succeed on its claim, Chase must show (1) the existence of the contract, (2) Plaintiff's knowledge of the contract, (3) intentional procurement of breach of the contract, (4) without justification, and (5) damages. Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1994). Where a party in good faith asserted "a legally protected interest of its own, believing that its interest may otherwise be impaired or destroyed by the performance of the contract or transaction" there is not wrongful interference. Id. The question of whether the party's actions were reasonable conduct under the circumstances is ordinarily a question of fact. Id. Because fact questions remain as to whether or not Plaintiff in good faith believed it had a protected legal interest in the notes, summary judgment on the tortious interference claim is denied.

**CONCLUSION**

The facts of this case are undisputed. Plaintiff has suffered losses as a result of

Centennial's failure to pay for the Cupido and Campbell promissory notes. At the heart of this dispute is the question of whether Plaintiff is legally entitled to recover for its losses from either Chase or American Bank. In order to recover from either Defendant, Plaintiff must show a property interest in either the notes or the proceeds. Plaintiff cannot, as matter of law, do so. As such, summary judgment dismissing Plaintiffs claims against both Chase and American Bank is granted. Because Chase has provided undisputed facts showing its legal right to the Cupido and Campbell notes and mortgage deeds, summary judgment on Chase's conversion and declaratory judgment counterclaims is granted.

Accordingly, **IT IS HEREBY ORDERED** that:

1. American Bank's Motion for Summary Judgment (Docket No. 30) is **GRANTED**;

2. Chase's Motion for Summary Judgment (Docket No. 33) is:

   a. **GRANTED** as to Plaintiff's claims,

   b. **GRANTED** as to Chase's Conversion and Declaratory Judgment claims, and

   c. **DENIED** as to Chase's Tortious Interference and Unjust Enrichment claims.

Date: November 25, 2009

                     *s/Paul A. Magnuson*
                     Paul A. Magnuson
                     United States District Court Judge